IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WENDY ESPERANZA BENITEZ LIZAMA )<br>113 Holden Dr. )<br>Manassas, VA 20111 )<br>  )<br>  )<br>    Plaintiff, )<br>  )<br>v. )<br>  )<br>TOMS KING VIRGINIA, LLC )<br>335 Commerce Dr. )<br>Crystal Lake, IL 60014-0000 )<br>  )<br>Serve: )<br>  )<br>Corporation Service Company )<br>100 Shockoe Slip. Fl 2 )<br>Richmond, VA 23219 )<br>  )<br>    Defendant. ) | Civil Case No: 3:20at99999 |

## COMPLAINT

Plaintiff Ms. Wendy Esperanza Benitez Lizama, by counsel, moves this Court for entry of judgment in her favor, and against Toms King Virginia, LLC, and in support of such Complain alleges and avers as follows:

## NATURE OF ACTION

1.  Toms King Virginia, LLC ("Toms" or "Defendant"), discriminated against Ms. Lizama on the basis of her pregnancy in violation of Title VII of the Federal Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Amendments of 1977, 42 U.S.C. §§2000e, et seq.

## PARTIES

2. Plaintiff, Wendy Esperanza Benitez Lizama ("Ms. Lizama" or "Plaintiff") at all times material hereto was and is a resident of the Commonwealth of Virginia. At all times material hereto, Plaintiff was an "employee" of Defendant within the meaning of 42 U.S.C. §2000e(f).

3. Defendant, Toms King Virginia, LLC ("Toms" or "Defendant") is a Delaware corporation doing business in the Eastern District of the Commonwealth of Virginia and elsewhere. Defendant is an "employer" within the meaning of 42 U.S.C. §2000e(b). Defendant is a restaurant franchise and has over 500 employees.

## JURISDICTION

4. This Court has original jurisdiction over Ms. Lizama's claims under 28 U.S.C. §1331 and 1343(a)(4) and 42 U.S.C. §2000e-5(f)(3).

5. The amount in controversy in this action exceeds the jurisdictional minimum amount for this Court.

6. Toms was present in and regularly conducts business in the Eastern District of Virginia.

7. Toms is subject to the personal jurisdiction of this Court.

## VENUE

8. Toms was present in and regularly conducted affairs and business activities in the Eastern District of Virginia during the time of Ms. Lizama's employment with Toms.

9. The cause of action alleged in this action, and the conduct giving rise to the cause of action, arose and occurred in the Eastern District of Virginia.

10. The unlawful employment practice committed by Toms in this case occurred in the Eastern District of Virginia, and Ms. Lizama's employment would have continued in the Eastern District of Virginia but for the unlawful employment practice committed by Toms.

11.     Venue over Ms. Lizama's claim is proper in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. § 1331, 1332, and 1343(a)(4).

## PROCEDURAL STATUS

12.     Ms. Lizama's employment was terminated on January 1, 2020.  She timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). *See Exhibit* 1.

13.     On September 17, 2020, the EEOC issued Ms. Lizama a Right to Sue letter. *See Exhibit* 2.

14.     This action is timely filed and all procedural prerequisites to suit have been met.

## STATEMENT OF FACTS

15.      On July 14, 2017, Plaintiff was hired by Defendant to work as a cashier at a Burger King Restaurant fast food location owned by Defendant located at 45200 Monterrey Court Sterling, VA 20166.

16.     Within a few months, because of her success as an employee, Plaintiff was promoted to Shift Leader at that location by her then district manager named Waseem (last name not known at this time). As part of this role, Plaintiff was paid an hourly rate of $11.25.

17.     In August of 2018, Plaintiff was transferred to another Burger King location in Manassas, Virginia to work as a Shift Leader.

18.      As a Shift Leader, Plaintiff worked an average of thirteen (13) hours per day.

19.      During the time that Plaintiff served as a Shift Leader, she received consistently positive feedback. She received ongoing praise for her hard work and dedication to ensure customer satisfaction, quality control and training employees while being loyal and adhering to the company's policies and practices.

20.     In November 2018, Plaintiff resigned from her position as Shift Leader and took another employment opportunity as a Shift Manager.

21.     After leaving her employment with Defendant, Plaintiff was contacted on numerous occasions by Mr. B (full name unknown at this time, hereinafter referred to as "Mr. B"), one of the district managers of the location that she previously worked at. The purpose of Mr. B's numerous attempts to reach Plaintiff was to try and solicit Plaintiff to return to work for Defendant. Given her strong record, performance, and capabilities, Mr. B tried to incentivize Plaintiff by offering her the role of Shift Manager, a step up from her former role as Shift Leader.

22.     As part of Mr. B's numerous attempts to solicit Plaintiff to return to Defendant's employ, he consistently praised Plaintiff and told her that she would be a valuable asset for that leadership role and begged her to return. Plaintiff was also told that the role would include "great" health and vacation benefits. Since Plaintiff did not have such benefits with her new employer, she accepted the offer to return to work for Defendant as an Assistant Manager.

23.     Accordingly, Plaintiff returned to work for Defendant in March of 2019 as an Assistant Manager. She was offered a salary of $36,500.00 and provided annual vacation and sick days as well as health benefits. At the time of her return, the store manager was named Saeed. The store had one shift leader named Ernesto, and another male assistant manager.

24.     As an Assistant Manager, Plaintiff was responsible for overseeing the entire restaurant location. In addition, Plaintiff was responsible for assisting in the creation of employees schedules, coordinating, and restocking inventory, and managing employees. Many of the duties and responsibilities that Plaintiff had overlapped with that of the store manager.

25.     On or about June 2019, the store manager, Saeed, left the store location and asked Plaintiff to take on that role (in addition to her existing duties and responsibilities. Plaintiff

agreed to and began working an average of 11-12 hours per day, seven (7) days per week. The store was significantly understaffed and she was not provided any additional compensation or benefit during this time.

26. On or about September 1, 2019, Plaintiff was promoted to store manager by Mr. B. Plaintiff was offered a new salary of $48,000.00. Plaintiff was incredibly excited about the promotion and new opportunity. She took great pride in the work that she did and enjoyed her job.

27. After accepting the promotion, Plaintiff expressed her concerns to Mr. B that the location was significantly understaffed and that she needed additional support in order to fulfill her duties as store manager. He agreed to assist in obtaining additional help for the location.

28. In early December 2019, while at work, Plaintiff began to feel unwell. She told Mr. B that she was not well and left to go to the emergency room.

29. After arriving at the hospital, a series of tests were conducted and Plaintiff was told that she was eight (8) weeks pregnant.

30. After learning this information, Plaintiff was incredibly fearful to inform Defendant because she was terrified that if she did, she would lose her job.

31. On December 18, 2019, Plaintiff had an appointment to confirm her pregnancy at the Mother of Mercy Free Medical Clinic in Arlington, Virginia. At that appointment, she was instructed by the doctor to keep her stress to a minimum, to avoid lifting heavy items, not to work more than five consecutive hours without taking a break and that she should not exceed more than 10 hours in any given workday.

32. On December 19, 2019, while at work, Plaintiff sent a text to Mr. B informing him that she was pregnant. Mr. B replied "congratulations" and said that he would start to seek help for

the store. He also told Plaintiff to "take care" of herself. Also, on that day, Plaintiff informed the restaurant's cook, Carmen, that she was pregnant.

33.     Since Mr. B was not at the store that day, she sent another text to him to remind him of the importance of her needing additional help and support at the store. She also told him that her doctor advised her not to work more than 10 hours per day. In response Mr. B told Plaintiff that he would speak to his supervisor, Mohammad.

34.     Later that week, Plaintiff learned that Mr. B was leaving his role at that location and that Mohammad was going to take over his role until it was filled. Plaintiff was concerned about how management would handle her pregnancy in his absence.

35.     Plaintiff wanted to make sure that Mohammad was informed of her circumstances and sent him a text message informing him that she was pregnant. She was apologetic and stated that she could not work as long of days she was currently working. She repeated her request for assistance and support for the store. In support of that request, she stated that it was just her and the current shift manager running the store. In response, Mohammad requested a note for human resources. Accordingly, Plaintiff requested and provided a note from her doctor.

36.     Later that week when Plaintiff arrived at work for one of her shifts, she was introduced to Richard Coyle, the new district manager. After meeting him, Plaintiff informed him about her pregnancy and reiterated the instructions and modifications that she was given by her doctor. Richard Coyle replied "wow, you do not look pregnant. But anyways, we are going to help you." He also requested a copy of the doctor's note which Plaintiff provided to him later that day.

37.     Despite the fact that Plaintiff clearly relayed the instructions from her doctor that she would not work more than 10 hours per day, these instructions were completely ignored.

Mohammad and Richard Coyle had Plaintiff on the schedule for 13-14 hour shifts for the following two weeks.

38.     On January 1, 2020 while at the store for her shift, Richard Coyle came to the store and requested to speak with Plaintiff immediately. He proceeded to escort Plaintiff into the lobby and tell her that the store was going to be closing and that she was being terminated. In response Plaintiff said, "what will happen to me, I am pregnant. I need my job." Richard Coyle replied, "we do not have positions for you. I cannot find you another job. If you want work, you can apply to be a crew member." Plaintiff responded, "crew members do not get benefits; you are letting me go unjustly." He replied, "you are pregnant and now you can take some time off." In response, Plaintiff reiterated the importance of retaining her benefits and how devasting job loss would be to her family in their circumstances. Plaintiff also asked why she was not told or given any indication that this was going to be happening so that she could better prepare and find another position. Richard Coyle did not have a response. In addition, Plaintiff asked what would happen to the other employees at that location. Richard Coyle told her that they were going to be transferred to other locations. Plaintiff told Richard Coyle that she knew many other locations were desperate for store managers. She specifically stated that she knew that the Potomac location needed a sore manager. In response, Richard Coyle stated that he was not able to transfer her to another location and reiterated that she would need to go through the application process if she wanted to be considered for any other location and that "it would be a good opportunity" for her to take time for herself because she was pregnant.

39.     At the conclusion of the conversation, Plaintiff went back into the restaurant and straight to the bathroom where she broke down. That day, her boyfriend Josue was there assisting her with the inventory.

40. When Richard Coyle returned inside the restaurant, he asked Josue where Plaintiff was. Josue said that he did not know. Richard Coyle responded that Plaintiff was likely in the restroom and needed him. Josue immediately went to the restroom and found Plaintiff there crying. He asked her what happened and she explained that she repeated the conversation that she had with Richard Coyle and that she was terminated. Shortly thereafter, they both left the restaurant and Josue drove them home.

41. Later that day, Plaintiff sent a text message to Richard Coyle requesting that she be paid out the vacation days that she accrued. This totaled approximately 42.98 hours. He never replied and she did not receive her vacation pay.

42. Further, Plaintiff did not receive her final paycheck for the hours that she worked on December 30, 2019 and December 31, 2019 which totaled approximately 25 hours.

43. Richard Coyle and other management were aware that the store was closing for a significant period of time before January 1, 2020.

44. Despite knowing that the store was closing and that Plaintiff would have to find alternative work, Defendant intentionally withheld such information from her.

45. Defendant purposefully avoided helping Plaintiff find another opportunity to be transferred to another location.

46. There were several employees that worked at that location that were transferred to other locations and were not required to submit an application for employment. These included the following individuals: Ernesto (store manager), Carmen (cook), Maria Luisa (cook), Lucy (cook).

47. Plaintiff was the only employee that was told that instead of being transferred to another location she had to submit a formal application and start from a demoted position as crew member.

48. At no point in time did Richard Coyle offer Plaintiff an opportunity to transfer into another position at another restaurant.

49. The other employees that were transferred retained their position and were not asked to take a demoted or lower position.

50. Defendant prevented Plaintiff from seeking another opportunity by forcing her to go through the process of applying because she was pregnant. Plaintiff felt that she was penalized for being pregnant.

51. As a result of Defendant's actions, Plaintiff's self-esteem began to suffer considerably. Plaintiff experienced emotional distress, loss of self-confidence and felt ashamed for the treatment she was subjected to solely because she disclosed her pregnancy.

52. Since her termination, Plaintiff has experienced significant financial, emotional and psychological stress.

### COUNT I – VIOLATON OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT OF 1977

53. The foregoing paragraphs 1-52 are incorporated by reference as if set forth in full herein.

54. Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), makes it clear that discrimination based on pregnancy, childbirth, or related medical conditions is a form of sex discrimination prohibited by Title VII of the Civil Rights Act of 1964.

55. The purpose of the Pregnancy Discrimination Act is to give pregnant woman who are able to work the opportunity to work on the same conditions as other employees, and when they

9

are unable to work for medical reasons, they must be given the same rights, leave privileges and other benefits, as other workers who are disabled from working.

56. The Pregnancy Discrimination Act requires that pregnant employees be treated the same as non-pregnant employees who are similar in their ability or inability to work.

57. An employer can be held liable for taking an adverse action against a pregnant employee, such as terminating her employment based on her pregnancy.

58. Once Plaintiff found out that she was pregnant, she notified Defendant about her pregnancy and modifications that she was instructed to relay from her doctor.

59. Defendant was given notice of Plaintiff's pregnancy and her need for modifications to include no heavy lifting, no more than ten (10) hours per shift, and not to work more than five (5) consecutive hours without a break, and in response Defendant began mistreating Plaintiff and terminated her.

60. Defendant's actions by completely disregarding Plaintiff's requested modifications, failing to offer her another opportunity, withholding information about the location closure, and treating her differently than her non-regnant colleagues and subsequent termination after learning that she was pregnant constituted a violation of Title VII of the Federal Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Amendments of 1977, 42 U.S.C. §§ 2000e, et seq.

61. As a direct and proximate result of the unlawful discharge, Plaintiff has suffered damages, including past and future loss of income and benefits of employment, lost career opportunities and advancement, other past and future pecuniary losses, emotional stress, inconvenience, embarrassment, and humiliation.

62. As an expecting mother faced with discriminatory termination, Plaintiff was terrified about how she would provide for herself and her new baby. Plaintiff suffered extreme emotional

distress and depressive-like symptoms. She experienced a significant loss of self-esteem, felt ashamed and humiliated for the ridicule she suffered at Defendant and for being terminated after notifying Defendant that she was pregnant.

63.     Because Defendant carried out the discharge described above with malice and reckless indifference to the federally protected rights of Ms. Lizama, <u>see</u> Section 109(b) of the Civil Rights Act of 1991, Ms. Lizama is entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Lizama respectfully requests that this Court enter a judgment in her favor and against Defendant Toms, and further:

(A)     Award Ms. Lizama punitive damages, in an amount to be established at trial;

(B)     Award Ms. Lizama all damages as described above, in amounts to be established at trial, including unpaid hours worked, unpaid vacation, front pay and back pay, all lost income and benefits of employment both past and future, and compensatory damages for emotional stress, inconvenience, embarrassment, and humiliation;

(C)     Award Ms. Lizama all damages as described above, in amounts to be established at trial;

(D)     Award Ms. Lizama appropriate pre-judgment and post-judgment interest;

(E)     Award Ms. Lizama appropriate injunctive relief;

(F)     Award Ms. Lizama her attorney's fees and costs in this action, including costs and fees of expert witnesses; and,

(G)     Award Ms. Lizama such other and further relief as the Court deems necessary and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint. Plaintiff,

Dated: December 15, 2020

Respectfully submitted,

**Wendy Esperanza Benitez Lizama**

By Counsel:

<u>/s/ Hailey Breanne Render</u>
Merritt J. Green (VSB # 50995)
J. Andrew Baxter (VSB# 78275)
Hailey Breanne Render (VSB #89995)
General Counsel, P.C.
6849 Old Dominion Drive, Suite 220
McLean, Virginia 22101
Tel: 703-556-0411
mgreen@gcpc.com
abaxter@gcpc.com
*Attorneys for Plaintiff*